## C. S. & C. R. R. Co. v. FRANK J. TUTTLE.

1. CHANGE OF PLAT BY SURVEYOR.

   Where a surveyor makes a plat of certain land and the dimensions or lengths of the lines that are laid down upon the plat conflict with proved or admitted facts they must give way to them.

2. INTENT OF OWNER TO PREVAIL.

   Where certain lands have been platted in lots which the owner conveys by lot numbers, it matters not whether their boundary lines are correct or whether he gave entirely wrong lengths to all of them, as the intent is manifest to convey all the land, which intent cannot be overcome by any theory that may be subsequently discovered.

3. SHORTAGE ON PLAT TO BE DIVIDED PRO RATA BETWEEN THE PARTIES.

   If there is a shortage on a plat in which the owner intended to plat all his property, it is the well settled rule in this state that such shortage will be divided as near as possible *pro rata* between the owners of the whole.

KING, J.

This action was pending in this court by an appeal from the judgment of the court of common pleas.

July 21, 1886, the railroad company filed its petition in the court of common pleas against Franklin J. Tuttle in which they averred that they were the owners of a certain described piece of land and entitled to its possession and that the defendant was keeping them out of possession of part of it and that unless restrained he would appropriate the premises in question to his own use.

There was an answer to that petition after a time in which the defendant denied that plaintiff was the owner of the premises in question and he went forward in his answer to state the circumstances under which th - property had been divided into lots and conveyed to its different owners and proprietors but claimed from its allegations that the plaintiff had never acquired any title to the premises which defendant was claiming and also set up as defense that the rights, if any there were, were vested in another defendant, to-wit: The I. B. & W. Railway Company.

There was also an amended answer to that petition setting forth substantially the same facts as originally, denied the title of the plaintiff, denied the defendant was keeping the plaintiff out of possession of his own property and then going forward to set up facts with relation to the platting of this land and its conveyance and showing by the allegations of the answer that according to the original plat there was a portion of the land in the tract platted or which was claimed to be platted that had not been actually platted and had not been conveyed and he gives the

dimensions substantially of this strip of land and alleges the plaintiff has not any interest in it and he prays that all the matters in difference between the parties concerning the said boundary may be adjusted and said plat may be reformed so as to represent the survey as made between the said lots.

Sometime after that, January 10, 1890, the plaintiff filed another petition called an amended petition in which the plaintiff averred it was a corporation, that it was the owner of the lots, giving their numbers, and that the plaintiff was at the time of the commencement of this action, in the actual possession of the said lots and had good title thereto in fee simple, that these lots had formerly borne a different numbering and he gives it, and that defendant was giving out at the time of the commencement of this action, 1886, in public speeches and making claim to part of the lots, a strip off of the south part of said lots, and that defendant threatened to take possession of the same and gave out that he had title thereto and that plaintiff had no title to any part of the premises in question, or on part of the premises lying south of a certain line and that soon after the commencement of this action the defendant had knocked down about two rods of the fence plaintiff had erected in the north line of the premises, was still giving out and claiming that he was the owner of these premises and that the defendant since the commencement of this action had built a shed on the west extremity of one of the lots and said building or shed now stands on part of defendant's premises, and prays that defendant's title may be determined, plaintiff's title may be quieted and defendant enjoined from interfering with the plaintiff in any manner. If he should be found in possession of any part of these premises that he be ordered to surrender them.

In due time there was an answer filed to that petition. There was a denial that plaintiff was the owner and also a denial that he was in the posession of any part of this strip, and then setting up substantially the facts as previous answers, praying that the amended petition be dismissed and that to avoid further litigation the defendant prayed that the plat which he before described might be corrected in the manner he therein alleges.

Soon after this a supplemental answer was filed, setting up some additional facts, averring all the interest the plaintiff company have in the premises, came to it by virtue of a deed from a prior company and that there never had been any conveyance of the premises in question by the prior company, the owner, who held the title originally, to the plaintiff company.

There was a reply filed to that, and another supplemental answer is filed, alleging that since the filing of the petition the plaintiff had conveyed its title to still another corporation, then there is a third amended and supplemental answer filed and it seems to cover substantially the same ground the original answer covered with many additional allegations, the length of which will preclude me from reading. There was a reply denying the allegation that the land was conveyed to another corporation and there was a lease for a term of 99 years, renewable forever.

Finally these parties came to trial in this court upon the evidence and issues joined by these pleadings, and I will briefly state the conclusion we have come to. From all these pleadings we can extract this fact that this controversy is a dispute over boundary line and is as fairly within the case of Ellithorpe against Buck, 17th Ohio State, 72. It is

urged that the plaintiff was not in possession and could not maintain this suit until he was.

The property in controversy was uninclosed until shortly before the beginning of this action, it had never been enclosed, it was open for anybody to pass over it that saw fit and it is in evidence that people used it without regard to who owned it. Up to within a short time before this suit was commenced there is evidence that the plaintiff made some use of it, just how much is not very material, the second year before this action was commenced, the defendant, without making any other or additional boundaries to the land, did enter upon it and cultivated a strip of potatoes a rod wide along one side of it and the following year I think planted a second crop and cultivated it, and he testifies he gave permission to somebody else to come in there without renting it; there is evidence on the part of the railroad company that it also gave permission to somebody to plant potatoes. Beside that, the defendant, in the summer of the commencement of this action started the erection of a barn or a lean-to and laid sills upon the foundation, erected posts and put on rafters, and had so far proceeded at least when this action was commenced. He went on after the commencement of the action and completed the shed and has occupied it by himself or his tenants ever since. That is all there is of the possession of either of these parties that is worthy to be noticed in this case of this strip of land. That does not change it at all from a controversy as to where the boundary line is.

In 1852, somewhere about July, Lyman Miller, was the owner of a piece of land, about two acres or a little more, and he secured a surveyor by the name of T. W. Clapp to make a plat of it. Mr. Clapp or somebody seems to have written he made it in July, 1852. On November 21, 1854, Mr. Lyman Miller acknowledged it and it was left for record in this county on January 11th, 1855 On January 4th, 1853, after the survey was made and plat was presumably in Mr. Miller's possession, but before it had been acknowledged or recorded he made a conveyance to the S. C. & I. R. R. Co., of certain lots by the designation in the deed as shown upon his plat, lots numbered 9, 10, 11 and 12, and on September 14th, 1853, the same year, he made a conveyance to the person from whom the defendant in this case claims of lots 6, 7 and 8. Sometime after that, but the day is not before us, he also made a conveyance of another lot on this plat called lot 5. This plat contains 12 lots and they are numbered from 1 to 12 inclusive. The lots conveyed to the railroad company, 9, 10, 11 and 12, lie substantially north of, and if this plat be correct, their south ends adjoin or abut against the property claimed by the defendants in this action, which are lots 6, 7 and 8, and also lot 5, a part of which is involved in this suit so that by the plat the defendant's property and plaintiff's property are supposed to adjoin each other. The plat shows upon it that lots 6 and 7 of the defendant's property are bounded upon one end by Buckeye street, on Buckeye street it shows that they are each four rods in width, the plat shows that they are each ten rods in length, extending back at right angles with Buckeye street, and that each contains 40 square rods. So far now these figures are definite and certain and so far they declare two lots containing each 40 rods, and so far as the evidence in this case will show, the land is there to accommodate that description and is owned by defendant. These are probably the only two lots on this plat where length and breadth and area are given and where there is land sufficient to accommodate the

7 Dec. 5

measurements, but these two lots comprise the south boundary line nearly the entire length of that which is now disputed. So far as this plant has been re-surveyed or re-copied by surveyors, they have made the line bounding these lots eight rods in length as being substantially the entire length of this disputed piece of land and so far as any question is involved between plaintlff and defendant that line adjoining these two lots is the only line that needs to be considered.

Now as to the lots 9, 10, 11 and 12, plaintiff's property, when the maker of this plat came to designate it, he designated as I have said, by the number of lots and he gave the area of each of the lots, and the length of certain of the lines. It is impossible to tell from the plat what lines are correct. There is no width given to these lots except lot 12 is described as being 2 rods and 14-100, and upon lot 9 appears the designation four rods. These lots, 9, 10, 11 and 12 abut upon what was then known, perhaps still is known as Maple street, and the L. S. & M. S. Ry. After Maple street was laid out, the railroad company, to whom this land was conveyed, came in possession of part or all of this street, all of it for some distance and laid its railroad tracks upon it so really these lots now and ever since these railroad tracks were built, have abutted on the railroad right of way. The property about which this dispute has arisen are the two lots shown as fronting on Maple street. Now it is said that the measurements of these lines are incorrect and this raises our inquiry. Surveyors tell us if they give to this lot of land all there is described there as area that there will be a shortage on the plaintiff's land of a little more than four rods, there will be shortage of about the same, possibly a little more, probably six rods of the lots which were originally conveyed to Mr. Tuttle. That shortage will appear, not in the two lots I have mentioned but will appear in lot 8 which adjoins the two lots I have mentioned and if the two lots I have mentioned are given forty square rods, which the plat calls for, then it is conceded, I think, that lot 8 will not have upon it the number of square rods given upon the plat nor will it have the dimensions given on the plat. The plat as made by the surveyor of this county, Mr. Hughes, in which he gives to lots 6 and 7, the amount of land which they are said to contain in the original plat, gives to lot 8 a considerable less amount. That is about $7\frac{3}{4}$ rods or substantially the shortage which he finds would exist in these lots by giving the areas described.

Now another plat is prepared by Mr. Hughes upon the theory of defendants here in which they undertake to start upon the idea of bounding plaintiff's lands by lines which shall be substantially like the length of these lines laid down in Miller's plat without regard to area, and it is said in argument that area should not govern length of lines. That is true if the lines are shown to be correct, but the difficulty with Mr. Hughes' plat is he does not give the length to these lines as given in Miller's plat, and he gives a good reason why he does not. He says he cannot do it. That is evident, it is evident these lines cannot be laid, at least so as to make a regular boundary and the lengths be taken as in Mr. Miller's plat but why he changed them, no reason has yet been shown, nor do we understand why a surveyor can arbitrarily change figures or dimensions or lengths of lines that are laid down upon a plat to accommodate any given theory. There is not certainly any legal reason for it, he does it arbitrarily, and if it conflicts with facts it must give way to them. The great fact in this case is the plat, which may have been made, and probably was, without any accurate survey, and assum-

ing it was made by a surveyor in his office who had divided it and undertaken to give certain portions of its dimensions and area and to other portions area without dimensions, what are we to hold? At first it seems fundamental, and it appears here beyond any controversy that this paper shows that it was the intention of the maker of this plat to plat all the land between these streets which are mentioned which bound it, Buckeye street, State road, Lake Shore Railroad and Maple street, he intended to plat it into twelve lots and when he conveyed by lot numbers, he intended to convey every foot of that property. To say that thirty years thereafter, that it is discovered by somebody's theory that by rearranging these lines it can be found there is a surplus and that Mr. Miller said he was the owner of this surplus would be an astonishing proposition. When he conveys all these lands by the lot numbers it matters not whether these lines are correct or whether he gave entirely wrong lengths to all of them, still the intent is manifest to convey all this land and that is the overwhelming fact in the case and we cannot overcome that by any theory. The second fact pertinent here, is that the lots which abut this controverted property are laid out correctly on Mr. Miller's plat and the land is there and the defendant is the owner of it. When he obtained a deed to lots 6 and 7 he had a deed to forty square rods of land in each lot, his deed says so, says four rods wide and ten rods deep, and says so by making this plat part of the deed, and that would make a reasonably good description; a description in which we are not required to give greater force and effect to lines than area for lines and area agree. Now abutting upon the north of these two lots are the lots 9 and 10 on this plat, Mr. Hughes says that if 9 and 10 were correctly surveyed it would throw 11 over so that 9, 10, and 11, abut against these two lots. Now it was the intention of Mr. Miller that they should so abut and we cannot conceive any other way out of it. Taking these two points, the evident intention of the maker of this plat to plat the whole property and sell it, and the fact the two lots owned by defendant and abutting this line have all the land called for, and correspond with the deed in length, breadth and area, it follows as an irresistable conclusion that, when Miller conveyed this land by lot numbers he conveyed all the land he owned between 6 and 7, or if you please, 6, 7 and 8 and Maple street and Lake Shore road, he conveyed the land lying north of it. If there was a shortage on the plat the rule is well settled in this state that it will be divided as near as possible pro rate between the parties, and authorities to that effect are in the 7th O. S., 264, and in 2d O. S., 363, cases in many respects like this, I refer to this particularly because the court in delivering opinions in both of these cases say that by plats or maps which were concededly incorrect both as to lines and area that the intention of the maker of the plat was evident to divide the whole property by his plat. That intention is what we think is manifest here, that being so we think it clear he intended to convey all the property between the strip of land ten rods deep extending back from Buckeye street and the street adjoining on the north when he made the deed to defendant. We think plaintiff has sufficient possession to quiet title to this disputed boundary and is entitled to the relief in this case.